1                                                                       **O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| NATISHA HAMILTON, | CASE NO. CV 10-6133 ODW (RCx) |
|          Plaintiff, | ORDER **GRANTING in PART** and **DENYING in PART** DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [25] [Filed 06/22/11] |
| v. | |
| COSTCO WHOLESALE CORPORATION; ROBERT TAYAN; JULIE FRAZIER; AND DOES 1 THROUGH 100, inclusive | |
|          Defendants. | |

## I.   INTRODUCTION

Pending before the Court is Defendant Costco Wholesale Corporation's ("Defendant") Motion for Summary Judgment or, in the Alterative for Partial Summary Adjudication.  (Dkt. No. 25.)  Plaintiff Natisha Hamilton ("Plaintiff") has since filed an Opposition.  (Dkt. Nos. 27, 28.)  Having carefully considered all the papers filed both in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the following reasons, Defendants' Motion for Summary Judgment, or alternatively Partial Summary Adjudication, is **GRANTED in PART** and **DENIED in PART.**

## II.        FACTUAL BACKGROUND

Defendant hired Plaintiff at its Lancaster retail store in or around May 1998, and by 2006, Plaintiff was employed as a Return Clerk.  (SUF No. 1.)[1]  In connection with Plaintiff's employment, she received Defendant's 2004 and 2007 Employee Agreements ("EA"), which provided employees with a maximum of twelve months medical leave; "[f]ailure to return from an authorized leave of absence is a terminable offense." (Stevenson Decl. ¶ 4; SUF No. 7.)  On or about March 22, 2006, Plaintiff fell at work and injured her left leg, lower back, and left heel.  (SUF No. 9.)  Due to the injury, Plaintiff went on medical disability leave in or around May 2006 and filed a Worker's Compensation claim.  (SUF No. 10.)

As part of Plaintiff's Worker's Compensation claim, Dr. Gary Brazina examined Plaintiff and her relevant medical records, after which he issued a Qualified Medical Exam Report ("QME Report") in July, 2008.  (SUF No. 11.)  During the examination, Plaintiff complained about her daily living but rated her condition permanent and stationary.  (*Id.*)  Based upon this information, Dr. Barzina placed Plaintiff on a permanent work restriction of "semi-sedentary" in the QME Report. (SUF No. 12.)

In October 2008, Plaintiff wished to return to work and contacted Defendant's Worker's Compensation Manager.  (SUF No. 16.)  Plaintiff was informed she would first need to undergo an evaluation process meant to help returning employees.  (SUF Nos. 17, 18.)  An Assessment Meeting (the "Meeting") was scheduled for October 21, 2008, through RWL–an independent company hired by Defendant to evaluate employees who wanted to return to work.  (SUF Nos. 18, 19.)  Prior to the meeting, Plaintiff met with Dr. Payam Vahedifar, her pain management doctor, and discussed returning to work as a Refund Clerk or Outside Marketer; both jobs she had discovered were available at Defendant's Lancaster warehouse. (Hamilton Depo. at 30:10-31:18; 128:3-11.)  Dr. Vahedifar counseled Plaintiff that her previous Refund Clerk position demanded too

---

[1]  The Court refers to Defendant's Separate Statement of Uncontroverted Facts ("SUF").  (Dkt. No. 25-2.)  Plaintiff submitted a response to Defendant's SUF ("Pl.'s Resp. to SUF") (Dkt. No. 29), to which Defendant submitted a reply (Dkt. No 32-2).

2

much standing, but that she could work as an Outside Marketer because there was no specific amount of required standing in the job description.  (*Id.*)

As set for in the job description for the Outside Marketer, an essential function of the position is to "canvass for new business by signing up individual and business for Costco memberships . . . . This duty of the Outside Marketer requires that he or she spend most of the time outside the warehouse going from business to business selling new Costco memberships and setting up stations at different locations to attract new members." (SUF No. 39.)  During Plaintiff's career at Defendant's Lancaster warehouse, she had assisted the Outside Marketers on ten different occasions.  (SUF No. 37)  On these occasions, she sat in the office and called members to renew their memberships, sat at tables in the warehouse when canvassing for new members, and visited businesses. (*Id.*)

Prior to the Meeting, Plaintiff also met with Craig Stevenson ("Stevenson"), general manager of the Lancaster warehouse, to inform him that  she wanted to return to work, potentially at a different position.  (SUF No. 24.)  Stevenson replied that the Outside Marketer position was comparable to a Refund Clerk, and he would hold it open for Plaintiff until after the Meeting.  (SUF No. 25.)  Congruently, Stevenson  received an email from Frances Parisi ("Parisi"), a Work Ability Specialist employed by RWL. (Stevenson Decl. ¶ 7; Exh. J.)  The email stated Plaintiff could only "work approximately one-half time in a standing or walking position, with minimum demand of physical effort whether standing, walking or sitting[] ([lifting ten] pounds occasionally, negligible amount frequently)," due to her semi-sedentary work restriction.  (*Id.*)  The email also indicated Parisi would determine at the Meeting if Defendant would be able to accommodate Plaintiff's restrictions on a permanent basis.  (*Id.*)

On the appointed day, Plaintiff went to the Meeting at the Lancaster warehouse where she met with Robert Tayan ("Tayan"), the Lancaster Assistant General Manager; also in attendance via telephone were Julie Frazier ("Frazier")–Defendant's Accommodation Specialist–and Parisi.  (SUF Nos. 18, 28.)  The only document that Plaintiff took to the meeting was the QME Report.  (SUF No. 29.)  Parisi reviewed the

essential functions for the Refund Clerk and Outside Marketer, and  gave Plaintiff an opportunity to suggest accommodations that would enable her to perform the essential functions.  (SUF No. 31.)  When Plaintiff was asked about the ten pound lifting restriction, she indicated that no such restriction existed.  (Pl.'s Resp. to SUF Nos. 23, 24.)  An issue arose as to whether Plaintiff could perform the essential functions of a Refund Clerk as she "would [be] require[d] to stand/walk [greater than] half time" in violation of her work restriction.  (SUF No. 32; Exh. 21.)  At the time of the Meeting, neither Plaintiff nor Defendant offered a reasonable accommodation to this essential function; neither party suggested Plaintiff could perform the position on a part time basis.  (SUF No. 32, 33.)  With respect to the Outside Marketer position, again, neither party suggested a reasonable accommodation that would allow Plaintiff to "potential[ly] stand[]/walk[] [less than] 1/2 time," when preforming the essential functions of the position; according to the job description, Outside Marketers have the potential of standing/walking for less than half time when preforming their essential job functions.  (SUF No. 43; Exh. 21.)  Plaintiff signed a document at the conclusion of the Meeting stating that she and the other individuals attended the Meeting and were in agreement with the summary indicating Plaintiff could not perform either job.  (SUF No. 34.)

After the meeting, Stevenson and Fraizer determined they should terminate Plaintiff if she was unable to find a position at one of Defendant's warehouses that met her restrictions.  (Stevenson Decl. ¶ 12.)  Subsequently, Tayan sent Plaintiff an October 24, 2008 letter that restated the results of the Meeting, encouraged Plaintiff to apply for other positions–including any openings at the Santa Clarita warehouse–and to contact Defendant by November 1, 2008, or she would be terminated due to her exhaustion of medical leave time under the EA.  (SUF No. 47.)  Included with the letter was a termination form.  (SUF No. 48.)  Plaintiff's only response to the letter was that she called Tayan to let him know she was upset about receiving the termination form, as well as, being asked to have it signed and returned to Defendant.  (Pl.'s Resp. to SUF No. 51.)  On November 13, 2008, Stevenson sent Plaintiff another letter that restated the results of the Meeting, informed Plaintiff of alternative employment opportunities at the Santa

Clarita warehouse, and stated: "Because you have exhausted the leave of absence available under the [EA] [], and cannot return to work with or without accommodation, it is appropriate to separate your employment." (Stevenson Decl. ¶¶ 14, 15; Exh. L.)

As a result of the foregoing events, on June 25, 2010, Plaintiff filed a Complaint in the Superior Court of California against Defendant, alleging the following nine claims: (1)breach of contract; (2) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code section 12940; (3) harassment in violation of FEHA; (4) retaliation in violation of FEHA; (5) failure to accommodate in violation of FEHA; (6) failure to engage in the interactive work process in violation of FEHA; (7) failure to prevent discrimination in violation of FEHA; (8) wrongful termination in violation of FEHA; and (9) wrongful termination in violation of public policy. (Dkt. No. 1.) Plaintiff's claim for harassment was subsequently dismissed. (Dkt. No. 11.) On August 17, 2010, Defendant removed this action to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332. (*Id.*) Defendant now brings the instant Motion for Summary Judgment.

### III.    LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). That burden may be met by "'showing'– that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id*. at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Moreover, it is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

When ruling on a motion for summary judgment, the Court may consider evidence including the pleadings, discovery and disclosure materials, and any affidavits on file. Fed. R. Civ. P. 56(c)(2). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## IV.    DISCUSSION

Defendant brings the instant Motion seeking summary judgment or, in the alternative, summary adjudication as to Plaintiff's claims for breach of contract; disability discrimination and retaliation; failure to engage in the interactive work process;

1   failure to accommodate; failure to prevent discrimination; and wrongful termination.
2   Additionally, Defendant seeks summary judgment as to Plaintiff's claim for punitive
3   damages.  The Court will address each claim in turn.

4   **A.   BREACH OF CONTRACT**

5   "A cause of action for breach of contract requires proof of the following elements:
6   (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance;
7   (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  *CDF*
8   *Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (Ct. App. 2008).

9   Plaintiff contends Defendant breached the EA "by dismissing [Plaintiff] while she
10  was on approved medical disability leave, or, in the alternative, by failing to notify her
11  that taking more than [twelve] months of medical leave was cause for dismissal." (SUF
12  No. 60.)  While the EA protected Plaintiff from termination without good cause, it also
13  stipulated a maximum of twelve months medical leave, after which Plaintiff would be
14  terminated if she failed to return to work.  Additionally, Plaintiff signed a document
15  indicating she was responsible for reading the EA and complying with its policies. (SUF
16  No. 7.)  At the time Defendant allegedly breached the EA by terminating Plaintiff, she
17  had been on medical leave for twenty-nine months; seventeen months beyond the
18  contractual limit set by the EA. (SUF No. 24.)  Thus, Plaintiff was in material breach of
19  the EA by not performing her duties under the contract antecedent to her termination, i.e.
20  returning to work after the twelve months of medical leave expired.  Consequently,
21  Plaintiff fails to fulfill element two of her breach of contract cause of action and
22  Defendant's Motion is **GRANTED** as to this claim.

23  **B.   DISABILITY DISCRIMINATION AND RETALIATION**

24  Under the FEHA, it is unlawful for an employer "to bar or to discharge [a] person
25  from employment" because of a physical disability. Cal. Gov't Code § 12940(a).
26  However, the FEHA specifically limits the reach of the mandate: "This part does not
27  prohibit an employer from . . . discharging an employee who, because of the employee's
28  medical condition, is unable to perform his or her essential duties even with reasonable
    accommodations . . . ." Cal. Gov't Code § 12940(a)(2).

For assessing claims of disability discrimination and retaliation, California courts have adopted a three stage burden-shifting test known as the *McDonnell Douglas* test. *Zhang v. Walgreen Co.*, No. 09-05921, 2010 WL 4922650, at *4 (N.D. Cal. 2010); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination or retaliation. *Guz*, 24 Cal. 4th at 354. Second, if the first threshold is met, the burden shifts to the defendant "to articulate a legitimate non-discriminatory reason for its employment decision. Third, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citations omitted); *Scotch v. Art Institute of Cal.*, 173 Cal. App. 4th 986, 1020 (Ct. App. 2009).

### 1.     Disability Discrimination

For Plaintiff to establish a *prima facie* case for disability discrimination, she must provide evidence that: "(1) [s]he suffers from a disability, (2) [s]he is a qualified individual capable of performing the essential functions of the job with or without a reasonable accommodation, and (3) [s]he was subject to an adverse employment action because of the disability." *Jackson v. Simon Property Group, Inc.*, No. 10–2521, 2011 WL 2446299, at *9 (N.D. Cal. June 17, 2011) (citing *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (Ct. App. 1997)). In "disability discrimination actions, the plaintiff has not shown the defendant has done anything wrong until the plaintiff can show he or she was able to do the job with or without reasonable accommodation." *Green v. State of Cal.*, 42 Cal. 4th 254, 265 (2007).

With regard to the second element, essential functions are defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." Cal. Gov't Code § 12926(f). Evidence of essential functions may include: "([1]) [t]he employer's judgment as to which functions are essential; ([2]) [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; or ([3]) [t]he amount of time spent on the job performing the function." Cal. Gov't Code §

1    12926(f)(2)(A-C).

2        "'Reasonable accommodation' may include either of the following: (1) [m]aking
3    existing facilities used by employees readily accessible to, and usable by, individuals with
4    disabilities[;] [or] (2) [j]ob restructuring, part-time or modified work schedules,
5    reassignment to a vacant position . . . and other similar accommodations for individuals
6    with disabilities."   Cal. Gov't Code § 12926(n)(1-2).   An employer's "obligation to
7    reassign a disabled employee who cannot otherwise be accommodated does 'not require
8    creating a new job, moving another employee, promoting the disabled employee, or
9    violating another employee's rights . . . . "  *Hastings v. Department of Corr.*, 110 Cal.
10   App. 4th 963, 972-73 (Ct. App. 2003) (citations omitted); *see also Raine v. City of*
11   *Burbank*, 135 Cal. App. 4th 1215, 1224 (Ct. App. 2006) ("[A]n employer has no duty .
12   . . to accommodate a disabled employee by making a temporary accommodation
13   permanent if doing so would require the employer to create a new position just for the
14   employee."). Moreover, "[r]easonable accommodation does not require the employer to
15   wait indefinitely for an employee's medical condition to be corrected." *Hanson v. Lucky*
16   *Stores, Inc.*, 74 Cal. App. 4th 215, 226-27 (Ct. App. 1999).[2]

17       It is uncontested that Plaintiff suffers from an ankle and back disability that led to
18   a work restriction rating of semi-sedentary; which limited Plaintiff to working
19   approximately one-half the time in a standing or walking position, with a minimum
20   demand of physical effort whether standing, walking or sitting.[3]  Assuming Plaintiff was
21   legitimately terminated because she had over extended her medical leave beyond the
22   maximum time prescribed by the EA, a question of material fact still remains as to the
23   second element.  In particular, it is disputed whether or not Plaintiff would have been able
24   to perform the essential job functions of an Outside Marketer due to her standing and

25

26       [2] Within the context of a motion for summary judgment, a "reasonable accommodation is
27   ordinarily a question of fact" unless "the undisputed evidence leads to only one conclusion as to the
     reasonableness of the accommodation sought, summary judgment is proper." *Raine*, 135 Cal. App. 4th
28   at 1227 n.11 (citations omitted).  In this case however, the question is not whether an accommodation
     was reasonable, but if one was ever given.  *See id.*

         [3] At this junction, the Court will not address the contested ten pound lifting restriction as it is not
     relevant to the Court's finding of a disputed genuine fact.

walking restriction.

As set forth in Defendant's job description for the position, an essential job function for the Outside Marketer is to canvass for new memberships by going from business to business and setting up stations at different locations.   Defendant interprets this to mean the position requires standing in front of potential members for most of the time.   Plaintiff's work restriction, however, limited her to work approximately one-half the time in a standing or walking position.   Thus, Defendant contends Plaintiff's work restriction prohibits her from performing this essential function and that there is no way to accommodate the restriction; the lack of an ability to accommodate being evidenced in the assessment meeting report. Therefore, Defendant argues it was justified in terminating Plaintiff's employment.

Plaintiff admits that the position requires standing, but contends that it does not require standing for eight hours straight.   From Plaintiff's own experience with the Outside Marketers, which the Court may use pursuant to California Government Code section 12926(f)(2)(C), she argues that the Outside Marketers are rotated which allows Marketers to spend half their time in the office, as well as, remain seated often while canvassing for business.   (Hamilton Depo. 134:3-17, 136:18-25.)   Additionally, the assessment meeting report indicates that the position of an Outside Marketer includes *the potential* of standing/walking for more than half of the time as part of its essential functions.   It does not state that the employee *would* be required to stand/walk more than half the time; unlike the Refund Cashier assessment.   Moreover, Dr. Vahedifar told Plaintiff before the assessment meeting that she could work as an Outside Marketer because the job description did not specify an amount Plaintiff would be required to stand.   For those reasons, the Court finds a genuine issue of material fact as to whether Plaintiff is a qualified individual, able to perform the essential function of an Outside Marketer with or without a reasonable accommodation.   Defendant's motion is **DENIED** as to this claim.

### 2.    Retaliation

To establish a *prima facie* case for unlawful retaliation, Plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) Defendant thereafter subjected her to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

Plaintiff alleges that Defendant engaged in unlawful retaliation when she informed Defendant of her disability and asked for work accommodations, Defendant failed to assign her to an open position, and subsequently terminated her employment.  (Compl. ¶¶ 51-52.)  Assuming *arguendo* that Plaintiff engaged in protected activity and was subjected to an adverse employment action, Defendant argues that the claim fails because there is no evidence to establish a causal link between the protected activity and any alleged adverse employment action.  (Mot. at 16.)

Plaintiff avers that she fulfilled the first element of this cause of action by informing Defendant that she suffered from Reflex Sympathetic Dystophy on or around March 22, 2006. (Compl. ¶ 51.)  However, Defendant immediately permitted Plaintiff to go on medical disability, which lasted for more than two years prior to the alleged adverse actions forming the substance of this cause of action.  Furthermore, Plaintiff remained employed by Defendant while on medical leave for twenty-nine months and did not file a claim for retaliatory discrimination within the statuary mandated period of one year; nor did she file any complaint until this lawsuit, eighteen months after her termination.  *See* Cal. Gov't Code § 12960(d).  Plaintiff's case does not meet the qualifications for a ninety-day filing exception under Section 12960(d)(1-4). Plaintiff does not qualify for equitable tolling because she alleges no excusable delay for failing to file a claim for retaliatory discrimination immediately after the alleged adverse action; nor did Defendant fraudulently conceal its action of terminating Plaintiff to qualify for equitable estoppel. In light of the following, the causal connection between Plaintiff informing Defendant of her disability and the alleged adverse termination is left wanting.  *See, e.g.*, *Rice v. Ralphs*

*Foods*,   No. 09–02650, 2010 WL 5017118, at \*4 (N.D. Cal. Dec. 03, 2010) (not reported).   Defendant's Motion is **GRANTED** as to this claim.

### C.   FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

It is the employer's responsibility under the FEHA "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical [] [] disability or known medical condition." Cal. Gov't Code § 12940(n).   "I[t] is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one."   *Spitzer v. Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384 (Ct. App. 2000) (internal quotation marks omitted).

After the interactive process has begun, both sides "must participate in good faith, undertake reasonable efforts to communicate [their] concerns, and make available to the other information which is available, or more accessible, to one party."   *Gelfo v. Lockheed Martin Corp.*, 140 Cal.App. 4th 34, 62 n. 22 (Ct. App. 2006); *Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) ("The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process."). "[I]f the process fails, responsibility for the failure rests with the party who failed to participate in good faith."   *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1252 (Ct. App. 2008).

Defendant argues that it engaged in the interactive process when it allowed Plaintiff to remain on medical disability leave for over two years, immediately scheduled and performed an assessment meeting to determine her ability to return to work once put on notice of her desire to return, attempted to communicate with her about alternative employment opportunities at other warehouses, and asked to be kept informed of any changes in her medical condition. (Mot. at 18-19.) Defendant also contends Plaintiff was ultimately responsible for the failure of the interactive process due to her lack of

1  communication with Defendant after the assessment meeting; "[Plaintiff] responded to

2  none of [Defendant]'s communications, except to complain that she received blank

3  termination forms". (*Id.*)

4       Plaintiff, on the other hand, avers Defendant failed to engage in a good faith

5  interactive process. (Opp'n at 15-16.) Specifically, Plaintiff alleges Defendant ignored

6  her precise limitations during the Meeting, failed to work with her to create reasonable

7  accommodations or alternative employment, and sent a letter to Plaintiff that both

8  encouraged her to apply for other positions and included a termination form. (Pl.'s Resp.

9  to SUF Nos. 44, 46.) Because the occurrence or failure of the interactive process is so

10 dependant upon the good faith efforts of the parties in this case, the Court cannot–as a

11 matter of law–determine whether or not Plaintiff and Defendant engaged in the interactive

12 process. Defendant's Motion is **DENIED** as to this claim.

13      **D.**   **FAILURE TO ACCOMMODATE**

14      Even if Defendant engaged in the interactive process as described above, it still may

15 be liable to Plaintiff for failure to accommodate. "The essential elements of a failure to

16 accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the

17 plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the

18 position); and (3) the employer failed to reasonably accommodate the plaintiff's

19 disability." *Cuiellette v. City of L.A.*, 194 Cal. App. 4th 757, 766 (Ct. App. 2011).

20      While it is uncontested that Plaintiff has a disability covered by the FEHA, the

21 Court has already established that, in this case, whether or not Plaintiff was a qualified

22 individual to perform the essential functions of an Outside Marketer is a matter of fact to

23 be determined by a jury. Therefore, Defendant's Motion is **DENIED** as to this claim and

24 the Court does not find it necessary to address whether or not Defendant failed to

25 reasonably accommodate Plaintiff's disability.

26      **E.**   **FAILURE TO PREVENT DISCRIMINATION**

27      "A failure to prevent discrimination . . . claim must be supported by a specific

28 factual finding that discrimination . . . actually occurred at plaintiff's workplace." *Hoey*

13

*v. New York Life Ins. Co., Inc.*, No. 09–02116, 2011 WL 2681232, at *10 (E.D. Cal., July 08, 2011); *Trujullo v. North Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 288–89 (Ct. App. 1998).  Because this cause of action is predicated upon a factual finding of discrimination and Plaintiff's claim for disability discrimination remains, the Court cannot enter judgment for Defendant on this claim.  Defendant's Motion is **DENIED** as to this claim.

### F.   WRONGFUL TERMINATION

It is unlawful for an employer to terminate an employee because of a physical disability unless it can be proven that the employee could not perform the essential functions of his or her job with or without reasonable accommodations.  *See* Cal. Gov't Code § 12940(a).  In addition, an employer may be liable "for discharging an employee for performing an act that public policy encourages, or refusing to perform an act that public policy would condemn."  *Scott v. Phoenix Schs., Inc.*, 175 Cal. App. 4th 702, 708 (Ct. App. 2009).  To establish a claim for wrongful termination in violation of public policy, Plaintiff must show: (1) an employer-employee relationship; (2) that the termination of plaintiff's employment was violation of public policy; (3) that the termination of employment was a legal cause of Plaintiff's damages; and (4) the nature and the extent of Plaintiff's damages.  *See Holmes v. Gen. Dynamics, Corp.*, 17 Cal. App. 4th 1418, 1427 n.8 (Ct. App. 1993).

Within the context of the FEHA, "a plaintiff asserting a claim for wrongful termination [can] assert; (1) a tort claim for wrongful termination not related to any statutory claim, (2) a hybrid claim for wrongful termination against the public policy set forth in FEHA, and (3) a FEHA claim for wrongful termination."  *Roquemore v. California Dept. of Forestry & Fire Prot.*, No. CIV-F-1944 AWI DLB, 2009 WL 1391522, at *4 (E.D. Cal. May 14, 2009) (citing *Williams v. Housing Auth.*, 121 Cal. App. 4th 708, 714 (Ct. App. 2004)).  In like manner, Plaintiff has filed a claim for wrongful termination against the public policy set forth in FEHA in addition to a FEHA claim for wrongful termination.

The Court finds that questions of fact exist regarding Plaintiff's claims for wrongful termination. First, it is undisputed that Plaintiff and Defendant have an employer-employee relationship. Second, as discussed above, questions of fact exist as to whether Plaintiff was constructively terminated. Third, questions of fact exist as to whether Plaintiff's alleged constructive termination was in violation of FEHA, *i.e.* she was discriminently terminated because of her disability when she could have performed the essential functions of an Outside Marketer with reasonable accommodations. *See City of Moorpark v. Superior Ct.*, 18 Cal. 4th 1143, 1161 (1998) ("We conclude that disability discrimination [under FEHA] can form the basis of a common law wrongful discharge claim."). Defendant's motion is **DENIED** as to these claims.

### G.   PUNITIVE DAMAGES

Punitive damages may be recoverable against an employer "where it is proven by clear and convincing evidence" that an officer, director, or managing agent of the corporation "authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code §§ 3294(a), (b). "'Managing agents' are employees who 'exercise [] substantial discretionary authority over decisions that ultimately determine corporate policy.'" *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (Ct. App. 2000). "Whether an employee is a managing agent" is a factual question for a jury and "must be made on a case-by-case basis. . . . However, where insufficient evidence supports a verdict in the plaintiff's favor, no factual issue remains for the jury to decide." *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 63 (Ct. App. 2006) (citation omitted).

Here, Plaintiff alleges Defendant "had in place policies and procedures that specifically prohibited and required [] [Defendant's] managers, officers, and agents to prevent discrimination, [and] retaliation . . . . Defendants Tayan and Frazier chose to consciously and willfully ignore said polices and procedures." (Compl. ¶ 57, 64, 71, 80, 87, 92.) Moreover, Plaintiff alleges "Tayan and Frazier were managers, officers, and/or agents of [D]efendant [] and were aware of Defendant['s] [] policies and procedures . . . ." (*Id.*) Plaintiff does not alleged Tayan and Frazier were directors.

As indicated by Defendant, however, Tayan and Frazier are not managing agents because they have no ability to set corporate policy for Defendant.  At the time of the alleged adverse action, Tayan was the Lancaster Assistant General Manager and Frazier was an Accommodation Specialist.  As an assistant general manger at a single warehouse, Tayan would not have final say in setting forth policies at the Lancaster warehouse, let alone exercise *substantial discretionary authority* over decisions that ultimately determine corporate policy.  The same is true for an accommodation specialist.  Furthermore, Frazier declares, "Senior management employees in [Defendant]'s national headquarters in Washington are in overall charge of business operations and set company-wide business policies and guidelines.  I have never had authority to establish or change [Defendant]'s corporate policies.  I am neither a corporate officer nor director of [Defendant]." (Frazier Decl. ¶ 2.)  Plaintiff fails to proffer any evidence to the contrary.  Thus, Plaintiff fails to show that a managing agent, officer, or director of Defendant authorized, ratified, or personally engaged in oppressive, fraudulent, or malicious conduct.  Defendant's Motion is **GRANTED** as to this cause of action.

## V.    CONCLUSION

Disputed issues of material fact exist as to Plaintiff's claims for disability discrimination, failure to engage in the interactive process, failure to accommodate, failure to prevent discrimination, and  wrongful termination in violation of FEHA and public policy.  Defendant's motion is thus **GRANTED in PART** and **DENIED in PART**.

**IT IS SO ORDERED**.

August 24, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE